CLERK'S OFFICE
U.S. DISTRICT COURT
AT ROANOKE, VA
FILED
September 26, 2025
LAURA A. AUSTIN, CLERK
BY: s/ M.Poff, Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| Adrian Guille, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 7:24-cv-00786 |
| ) | |
| Officer J. Eldridge *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Adrian Guille, a Virginia inmate proceeding *pro se*, filed this action pursuant to 42 U.S.C. § 1983, complaining about numerous conditions of confinement at Red Onion State Prison ("ROSP"). This matter is before the court on Guille's motion for a preliminary injunction. (Dkt. 3.) For the reasons that follow, the court will deny Guille's motion.

### I. Background

On November 12, 2024, Guille filed a motion for a temporary restraining order and preliminary injunction in which he asked for relief related to five particular conditions at ROSP. (*Id.*) Because of the severity of the conditions alleged by Guille, the court directed that Defendants respond to the motion prior to formal service of the case (Dkt. 7), which they did on December 17, 2024. (Dkt. 10.) In its response, Defendants denied the conditions claimed by Guille and opposed the motion. (*Id.*) Guille filed a reply. (Dkt. 18.) The court then held a status conference on June 11, 2025, relating to the then-current status of the matters raised in Guille's motion. (Dkts. 51, 58.) Based upon the contentions of the parties

during the status conference, the court determined that it would hold an evidentiary hearing as to Guille's requests for relief designated as items 2, 3, and 5 on page four of Guille's motion for preliminary injunction. (Dkt. 59.) Specifically, the court stated that it would receive evidence related to Guille's allegations of (1) denial of food and weight loss, (2) insufficient law library access and the library's failure to provide cases requested, and (3) placement into cells contaminated with urine and feces. (*Id.* at 1.)

The evidentiary hearing was set for July 11, 2025. (Dkt. 61.) On that day, the hearing began, but Guille stated that he had mailed to the court evidence and requests for witnesses that the court had not received. (Dkt. 71.) Accordingly, the court did not proceed with the hearing to permit additional time for Guille's evidence and request for witnesses to be received. (*Id.*) On July 24, 2025, the court received from Guille documents and an identification of the witnesses Plaintiff requested, which were dated July 13, 2025. (Dkt. 73.) The court never received copies of the submissions supposedly sent by Guille prior to July 11, 2025.

The evidentiary hearing was reset for and conducted on September 23, 2025. During the hearing, the parties presented evidence, witness testimony, and argument on the motion.

## II. Standard of Review

Federal Rule of Civil Procedure 65(a) authorizes courts to issue preliminary injunctions. "A preliminary injunction is an extraordinary remedy intended to protect the status quo and prevent irreparable harm during the pendency of a lawsuit." *Di Biase v. SPX Corp.*, 872 F.3d 224, 230 (4th Cir. 2017). The court may grant a preliminary injunction only "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is "never awarded as of right." *Id.* at 24.

"[G]ranting a preliminary injunction should be 'the exception,' not 'the rule.'" *Am. Fed'n of Tchrs. v. Bessent*, No. 25-1282, 2025 WL 2313244, at *3 (4th Cir. Aug. 12, 2025) (quoting *Munaf v. Geren*, 553 U.S. 674, 690 (2008)).

A plaintiff seeking a preliminary injunction must demonstrate (1) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm without preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter*, 555 U.S. at 20. The court must separately consider each *Winter* factor to grant injunctive relief. *Di Biase*, 872 F.3d at 230. A failure to establish one factor, however, warrants the denial of relief. *Am. Fed'n of Tchrs.*, 2025 WL 2313244, at *3 (noting that denying a preliminary injunction only takes the rejection of a single factor). As the Fourth Circuit recently summarized, "Plaintiffs seeking a preliminary injunction thus face an inherently uneven playing field." *Id.*

To satisfy the first factor, "[a] plaintiff need not establish a certainty of success, but must make a clear showing that he is likely to succeed at trial." *Di Biase,* 872 F.3d at 230 (internal quotation marks omitted). To satisfy the second, "a plaintiff must demonstrate more than just a possibility of irreparable harm." *Id.* (internal quotation marks omitted). The irreparable harm alleged by movant must be "neither remote nor speculative, but actual and imminent." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (quoting *Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 975 (2d Cir. 1989)). The third and fourth factors "merge" where, as here, the Government is the opposing party. *Miranda v. Garland*, 34 F.4th 338, 365 (4th Cir. 2022) (quoting *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

The typical preliminary injunction is prohibitory and generally seeks only to maintain the status quo pending a trial on the merits. *See Pashby v. Delia*, 709 F.3d 307, 319 (4th Cir. 2013). By contrast, mandatory injunctive relief such as that sought by Guille here "goes well beyond simply maintaining the status quo *pendente lite*, is particularly disfavored, and should not be issued unless the facts and law clearly favor the moving party." *Taylor v. Freeman*, 34 F.3d 266, 270 n.2 (4th Cir. 1994) (quoting *Martinez v. Mathews*, 544 F.2d 1233, 1243 (5th Cir. 1976)). A mandatory injunction is warranted in only the most extraordinary circumstances. *Id.* at 270 (citing *Wetzel v. Edwards*, 635 F.2d 283, 286 (4th Cir. 1980)). Further, "[i]t is well established that absent the most extraordinary circumstances, federal courts are not to immerse themselves in the management of state prisons or substitute their judgment for that of the trained penological authorities charged with the administration of such facilities." *Id.* at 268; *see also Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982) ("[J]udicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.").

### III. Analysis

Based on the court's review of Guille's complaint, his motion for a preliminary injunction, the exhibits attached to Defendants' brief opposing Guille's motion, Guille's reply, the parties' exhibits admitted as part of the evidentiary hearing, and witness testimony at the evidentiary hearing, the court finds that injunctive relief should not be granted.

At the status conference held on June 11, 2025, Guille affirmed that he had not been raped or beaten subsequent to his filing for injunctive relief. Guille re-affirmed that status at the evidentiary hearing on September 23, 2025, so there is no need for the court to enter any

prospective relief in connection with his claims of prior rape and assault. Additionally, Defendants' counsel explained that Guille is not eligible for protective custody under Virginia Department of Corrections Operating Policies, specifically Operating Policy 830.5 Section VIII (effective date Jan. 1, 2024), because of his history of aggression and disciplinary infractions and the lack of documented "keep separate" orders from other inmates. *See* Va. Dep't Corr. Operating Policy 830.5 § VIII(C)(3)–(5). The court lacks any information that Guille has even initiated the process for consideration of whether protective custody would be appropriate for him. *See id.* § VIII(B) (providing that inmates can request protective custody consideration at any time). Therefore and as previously noted, the court will deny Guille's requests for injunctive relief as to items 1 and 4 on page four of the motion. (Dkt. 3 at 4.)

Guille requested relief as to item 2 related to his food service. In his motion for preliminary injunctive relief, he asked that the court order that Defendants "cease the practice of giving him empty food trays" and feed him as any other general population inmate. *Id.* Meals are delivered to single inmate cells by guards at ROSP in Guille's cell block. Guille contends that Defendant Eldridge consistently gave him empty trays, referred to as "ghost" trays, when he was the officer serving the food in the cell block, and that Defendant Milgram has engaged in the same behavior after Eldrige stopped working in Guille's cell block. Guille presented the testimony of three other inmates who were housed in nearby cells. Each testified that they have heard Guille become upset and complain to the officers serving the food that his trays were empty. None of them could see the food trays from inside their cells.

Guille contended at the time of filing for injunctive relief in November 2024 that he had "already lost over 60 lbs" as a result of not receiving food. (Dkt. 3-1.) He testified at the hearing that he has to date lost 60-70 pounds as a result of the empty food trays and that he weighed 230 or 235 pounds at the time of his transfer to ROSP in July of 2024. Guille presented no documentary evidence of his weight at any point. Guille presented no evidence that he sought or received medical care as a result of inadequate caloric intake.

Defendants presented documentary evidence regarding Guille's weight at the hearing.[1] For example, Defendants presented medical records from the prison indicating that Guille was weighed by medical staff on July 30, 2024, shortly after his arrival at ROSP, with a recorded weight of 206 pounds (Dkt. 10-5 at 14), and on May 19, 2025, at 197 pounds (Dkt. 67-2 at 8). Additionally, Nurse Meade testified that Guille was weighed by medical staff on July 10, 2025, at 199 pounds. Defendants also introduced individual inmate daily logs with weekly weight data recording from October 24, 2024, to June 16, 2025, which collectively indicate that Guille's weight remained stable within the range of 188 to 198 pounds throughout that time, with one exception. (Dkt. 67-1.)

Although Guille disputed the accuracy of these documents and whether he had been weighed at the frequency described by Defendants, he did not present sufficient evidence to establish the immediacy of irreparable harm likely to befall him that injunctive relief could remedy. His most recent documented weight of 199 pounds, as presented during Nurse Meade's testimony, is considered a healthy or slightly overweight body mass index for his

---

[1] Defendants also presented testimony supporting the position that Guille has not been denied food and evidence relevant to the issue of his credibility. The court, at this time, does not determine whether Guille was, in fact, served empty food trays or make credibility determinations.

-6-

claimed height of 6 feet 3.5 inches. Therefore, the court finds that Guille has not established that he is in any immediate danger of irreparable harm from not receiving food, which the court should remedy with extraordinary relief.

The next relief requested by Guille relates to his allegations that he has often been placed into cells in the C-block that are contaminated with feces and urine. He asked that the court enter an injunction that orders the Defendants to stop putting him into contaminated cells.[2] (Dkt. 3 at 4.) At the evidentiary hearing, Guille testified that the last occurrence of him being placed into a contaminated cell was "a couple of months" ago, but that he fears it might continue at the Defendants' whim. He presented no evidence that he has sought medical care or suffered harm as a result of the alleged exposures. Therefore, the court finds that Guille failed to present sufficient evidence indicating he is likely to suffer irreparable harm that is imminent and non-speculative absent injunctive relief.

Finally, Guille claims that he is being denied access to materials from the law library. Defendants presented evidence and the testimony of Defendant Mefford, the law library supervisor, that supported the position that the law library had followed the applicable procedures and provided Guille with all materials requested by him to which he was entitled and that the library had available. The Defendants presented law library request forms spanning from October 5, 2024, through August 28, 2025, which facially indicate that available requested materials have been provided to Guille. (Dkts. 67-4 at 1–6, 79-1 at 1–3). Guille contended that he did not receive materials that the forms indicated had been provided to

---

2 As with the food issue, Defendants denied this behavior at the hearing, contending that cells are sanitized and cleaned prior to the placement of new occupants in the cells and that cleaning supplies are regularly offered to inmates at their election and offering documentary evidence supporting these contentions. The court, at this time, does not make any determinations as to the merits of the parties' respective contentions about this issue.

-7-

him, and he complains about not receiving the habeas corpus form for seeking a writ in Montana, a form for filing a "tort claim," and state law cases from states other than Virginia. He claimed he had submitted numerous request forms to the law library recently and received no response. In response, Mefford testified that Guille did receive the items requested, if they were available, and submitted a copy of the law library request forms reflecting Guille's signature acknowledging receipt of certain requested items, which are dated July 21, 2025, and July 24, 2025. (*See* Dkt. 79-1 at 2–3.)

The court finds that Guille failed to introduce sufficient evidence indicating that he is likely to suffer irreparable harm that the court could remedy by ordering injunctive relief related to the law library access. Guille did not establish any immediate need for any particular materials in connection with pending litigation that an injunction could remedy. The court cannot order the law librarian to provide materials she does not have access to or to provide forms that do not exist. Defendant Mefford testified that she has a general form available that could be provided to Guille upon request for filing for a writ of habeas corpus. She also testified that no form exists for filing a Virginia Torts Claims Act claim. Guille did not establish any deadline he will miss, any issue he will not be able to present, or any imminent statutes of limitations he will not be able to meet without unfettered access to library materials. The court notes that a lack of a form does not prevent the filing of a claim. Courts are adept at ascertaining the nature of *pro se* litigants' claims even when not presented in the correct format, and Guille has shown that he is capable of articulating his claims as demonstrated in this case. In sum and despite Guille's frustration with the limitations of the law library process, he has not shown a sufficient likelihood of irreparable harm that could be addressed

by the court's issuance of injunctive relief.

## IV. Conclusion

For the reasons outlined above, the court **DENIES** Guille's motion for a preliminary injunction (Dkt. 3).

The Clerk is **DIRECTED t**o send a copy of this Memorandum Opinion and Order to Guille.

**ENTERED** this 26th day of September, 2025.

*Jasmine H. Yoon*

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE