CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
September 22, 2026
LAURA A. AUSTIN, CLERK
BY: s/J.Vasquez
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| Adrian Guille, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 7:24-cv-000786 |
| | ) | |
| Correctional Officer Jeffrey Eldridge *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**AMENDED MEMORANDUM OPINION AND ORDER**

Plaintiff Adrian Guille, an inmate incarcerated at Red Onion State Prison ("ROSP") and proceeding *pro se*, instituted this action under 42 U.S.C. § 1983. Guille complains about incidents and conditions at the prison. He asserted twenty-one claims, contending generally that the thirty identified Defendants violated his constitutional rights in a variety of ways. The court previously conducted hearings in this case, issued multiple opinions resolving motions, and reviewed the voluminous filings. The action has been pending since November 2024, and Plaintiff Guille has been able to amend his claims and conduct discovery.

The named Defendants filed dispositive motions to challenge Guille's claims in his amended complaint, (Dkt. 24), which the court addresses in this opinion. Some of the Defendants moved to dismiss certain claims. (Dkt. 123.) Specifically, Defendants Natasha Adams, Chadwick Dotson, Dr. Kevin Fox, Brittany Jones, Eric Miller, Dalton Mullins, Gilbert Mullins, Isaac Mullins, and Anthony Owens moved for dismissal of the claims asserted against

them (Claims 3, 11, and 19).[1] (Dkt. 124.) Other Defendants moved for summary judgment on certain claims. (Dkt. 102.) Specifically, Defendants Jeffrey Eldridge, Coy Rogers, Randal Potter, Jacob Russell, Benjamin Warde, Jospeh Ellerbee, Jordan Milgram, Keaton Bowles, Alex Short, Johnny Hall, Nathan Cobb, Jacob Massengill, James Jones, David Anderson, David Cornett, Rebecca Mefford, Leah Holbrook, Keith Almarode, Donnie Trent, and Amee Duncan moved for partial summary judgment as to Claims 4, 6, 7, 8, 9, 10, 11, 14, 20, and 21. (Dkt. 103.) Collectively, Defendants challenge thirteen of the twenty-one counts asserted in the amended complaint. (Dkt. 24 at 18–23.) Guille responded to the pending motions with briefing permitted by the Federal Rules of Civil Procedure and the court's Local Rules, (Dkts. 133, 120), and with additional briefing exceeding that permitted under the Rules, (Dkts. 129, 136). The court has considered these submissions given Guille's *pro se* status. (*See* Dkt. 130 (granting leave for the filing of Dkt. 129).) Guille is reminded, however, that for the duration of the case he should submit only briefing permitted under the Rules (generally, one response opposing a motion *or* one brief in support of a motion and a reply brief after the opposing party files its response brief). Leave of court must be sought for additional briefing, and the court may strike briefing for which leave has not been granted.

## I. Standard of Review

"[T]he purpose of Rule 12(b)(6) is to test the legal sufficiency of the complaint." *Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state[] a plausible claim for relief" that "permit[s] the court

[1] The court refers to the claims specifically asserted by Guille as "Claims," which is how Guille refers to them in the amended complaint at Dkt. 24 at 18.

to infer more than the mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim is plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and if there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 556 (2007)). In making this evaluation, the court accepts all well-pled facts as true, but it need not assume the truth of any "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement," as these are not well-pled facts. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

Pleadings filed by *pro se* litigants must be construed liberally. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). "Principles requiring generous construction of *pro se* complaints are not, however, without limits." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). A *pro se* complaint must still "state a claim to relief that is plausible on its face." *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

Under Rule 56, summary judgment is proper where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists only where the record, taken as a whole, could lead a reasonable jury to return a verdict in favor of the nonmoving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009). In making that determination, the court must take "the evidence

and all reasonable inferences drawn therefrom in the light most favorable to the nonmoving party." *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011).

A party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). Moreover, "[t]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247–48. Instead, the non-moving party must produce "significantly probative" evidence from which a reasonable jury could return a verdict in his favor. *Abcor Corp. v. AM Int'l, Inc.*, 916 F.2d 924, 930 (4th Cir. 1990) (quoting *Anderson*, 477 U.S. at 249–50).

## II. Background

The discovery end date in this case, established by an order entered March 30, 2026, has passed. (*See* Dkt. 126.) While the court will consider any discovery disputes arising from previously issued discovery, none of the pending discovery disputes[2] impact the analysis herein.[3] Nonetheless, Guille repeatedly contends when opposing the pending motions that

[2] Guille filed a motion to compel after the filing of the Defendants dispositive motions, (Dkt. 146), seeking certain evidence. The Defendants opposed the motion, (Dkt. 147), on the grounds that Guille had not, in fact, conferred with them about the disputes as required by Fed. R. Civ. P. 37(a)(1) despite his bare claim that he had. The court had previously advised Guille about this obligation and offered to facilitate conferring if needed. (Dkt. 142 at 1–2.) Guille did not reply or otherwise establish that he had, in fact, conferred with the Defendants prior to filing the motion to compel. Merely telling the Defendants that he intends to file a motion to compel does not suffice as conferring. Therefore, the court **DENIES** the motion to compel without prejudice to Guille's right to file a properly supported motion after he has met and conferred with the Defendants. The court reiterates that it will consider only motions to compel that (1) are filed after the parties have met, conferred, and been unsuccessful in resolving the disputes raised; and (2) attach the relevant discovery requests and responses.

[3] Despite the court's denial of Guille's motion to compel, (Dkt. 146), the court also closely reviewed it and another discovery-related motion, (Dkt. 132), because of Guille's invocation of Rule 56 (despite the lack of a supporting affidavit) to ensure that the evidence sought by Guille could not impact the court's analysis of the issues resolved in this Memorandum Opinion and Order. The discovery sought by Guille would not alter the court's analysis herein in any event. Most of the information sought, if relevant and reasonably calculated to lead to the discovery of evidence, would relate to claims not challenged in the pending motions.

he is still "getting information," or he notes that he lacks the complete names of the Defendants. The court advised Guille about filing a Rule 56 motion if he contended that he lacked information needed to oppose summary judgment, (Dkt. 126 at 3; Dkt. 142 at 2), and also advised him that all Defendants other than John Does #1 and #2 had been identified, (Dkt. 126 at 3). The court informed Guille how he could request further amendment of the complaint, (Dkt. 43 at 2), and sent him docket sheets repeatedly so that he could confirm who he had named as parties and that his intended substitutions were properly entered, (*see* Dkts. 52, 126). Guille has been afforded solicitude as a *pro se* litigant, and the court concludes that the motions are ripe for resolution at this time.

Guille's allegations are wide-ranging, chimeric, and often changing, but all the claims are asserted under 42 U.S.C. § 1983, which provides a vehicle for recovery when a person acting under color of state law violates another's constitutional or federal rights. Section 1983 does not, however, provide a vehicle for addressing all wrongs. It provides a remedy only when a particular person has violated a constitutional or federal right. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002). Thus, there may be wrongdoing asserted that Section 1983 simply cannot address. *See, e.g., DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 191, 201–03 (1989) (rejecting § 1983 suit premised on a failure to protect claim). For example, officials cannot be held liable for alleged civil rights violations simply because they are in charge. *Iqbal*, 556 U.S. at 676 (rejecting *Bivens* liability based upon *respondeat superior*). Undifferentiated groups of individuals, such as "all guards," cannot be held liable under Section 1983. *Id.* ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Unnamed defendants

cannot be held liable under Section 1983. *Roberts v. City of Hagerstown, Md.*, No. 22-cv-0268, 2024 WL 640029, at *7 (D. Md. Feb. 14, 2024) ("[F]ederal cases cannot proceed against only 'unnamed, unserved defendants.'" (quoting *Whitehead v. Viacom*, 233 F. Supp. 2d 715, 725 (D. Md. 2002))). To present a viable Section 1983 claim against a defendant, a plaintiff must allege particular acts of wrongdoing or inactions of a particular defendant. *Iqbal*, 556 U.S. at 676. With these generalities in mind, the court now turns to the specific merits of the pending motions and first addresses the motion to dismiss.

## III. Analysis

### A. Defendants' Motion to Dismiss

Defendants Adams and Fox, both medical providers, assert that they should be dismissed from this action because Guille made no specific allegations about their personal involvement in any of the alleged facts giving rise to his claims. (Dkt. 124 at 8–9.) No factual allegations in the amended complaint relate to Adams or Fox by name. (*See* Dkt. 24.) Guille referenced only one Jane Doe Nurse and one Jane Doe Doctor in the amended complaint. (*Id.* at 19–20.)

Guille argues when opposing their motion to dismiss that he did make personal allegations against Adams and Fox in the amended complaint when he specified the actions of a "Nurse Jane Doe #1" and a "Jane Doe Doctor." (Dkt. 133 at 1.) The amended complaint's caption named "Nurse and Doctor Jane Does." (Dkt. 24 at 1.) But Guille clearly identified these Doe Defendants as other parties in his filings. (*See* Dkt. 47; Dkt. 92 at 3.)

Specifically, he identified Nurse Jane Doe # 1 as Leah Holbrook[4] and Dr. Jane/John Doe[5] as Donnie Trent. (Dkt. 47.) Both of those Defendants were added to the docket upon Guille's request, and they have appeared. (*See* Dkt. 54.) In a later motion to amend, Guille cites "7/23/24" as the date when he made personal allegations against Fox and Adams. (Dkt. 92 at 3.) It is unclear what he means by this reference because that date preceded the filing of the original complaint, and Fox and Adams were not named or identified in the original complaint either. The amended complaint contains allegations only against one nurse and one doctor, not multiple doctors or nurses. (Dkt. 24 at 6–7, 19–20.) As stated, Guille identified the nurse as Holbrook and the doctor as Trent in May of 2025. (Dkt. 47.) Guille's identification of these parties occurred after he had received copies of his medical records, which were attached to Defendants' initial filings on December 17, 2024. (*See* Dkt. 10-5.) Adams and Fox cannot defend against a claim of liability without any understanding of the facts upon which the claim is based.[6] Fox and Adams have not been fairly and timely apprised of the nature of the allegations against them as is required by Fed. R. Civ. P. 8, and thus their dismissal from this action is warranted.

Next, Defendants D. Mullins, G. Mullins, and Owens move for dismissal of the only claim asserted against them, Claim 3. (Dkt. 124 at 12–15.) Guille in Claim 3 asserts that his

[4] Guille alleges that "Jane Doe # 1" tended to him after he burned his leg. (Dkt. 24 at 6.) He then identified her subsequently as Holbrook. (Dkt. 47.)

[5] Guille's allegations against the Doe doctor defendant were asserted against a female doctor. (Dkt. 24 at 6.) His allegations do not relate to any male doctor (or nurse). Nonetheless, when Guille identified the Doe doctor as Donnie Trent, a male, and requested his substitution, (Dkt. 47), the court substituted Trent for the Doe doctor defendant.

[6] Guille contends in his briefing that Adams and Fox witnessed an alleged x-ray procedure in February or March 2025. (Dkt. 132 at 5.) Of course, parties cannot amend complaints through briefing. *S. Walk at Broadlands Homeowners Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). But even were this to be alleged and established in contravention of the medical records, such an allegation does not relate to any of the Claims as set forth by Guille. No actions of health care providers are at issue in the asserted Claims—other than Claim 6 where the one nurse described was identified as Defendant Holbrook and Claim 8, where the one doctor described was identified as Trent. The amended complaint contains no other claims relating to a doctor or a nurse, or to inadequate medical care generally.

legal materials were confiscated by these Defendants, who are Property Officers,[7] in violation of the First, Sixth, and Fourteenth Amendments under the U.S. Constitution. (Dkt. 24 at 18.) The amended complaint does not describe the materials[8] or what they related to with any specificity. Guille relates no facts that indicate any of the Sixth Amendment guarantees applicable only to criminal proceedings were involved. He relates no facts indicating that he was damaged by the confiscation, that his access to the courts was impeded, or that he was unable to participate in a court proceeding to his detriment such that the First Amendment would be implicated. *See Nealson v. Cole*, 7:24-cv-00799, 2026 WL 659410, at *3 (W.D. Va. Mar. 9, 2026). He relates no facts indicating that the seizure of the materials was retaliatory for exercising his First Amendment rights or that he was impeded in exercising any First Amendment right. Nor does he relate any facts indicating that he was denied due process in connection with the alleged confiscation. Further, no due process claim under Section 1983 exists for a random, unauthorized seizure of an inmate's property if there is an adequate post-deprivation remedy. Virginia law provides such a remedy, foreclosing any due process claim. *Wadhams v. Procunier*, 772 F.2d 75, 78 (4th Cir. 1985). Guille did not cite the Fourth Amendment in connection with this claim, but the court has considered its applicability nonetheless. However, any Fourth Amendment claims would fail because "the Fourth Amendment does not protect an inmate from the seizure and destruction of his property" given that inmates have no reasonable expectation of privacy in their cells. *Carter v. Smith*, No.

---

[7] The amended complaint only named a single "Property Officer John [D]oe" as a Defendant, (Dkt. 24 at 1), and Guille's factual allegations state only that one property officer confiscated legal materials, (*id.* at 18). Nonetheless, Guille identified three property officers as the single John Doe in Dkt. 92 at 3. In accordance with Guille's direction, the Clerk added the three property officers as Defendants. They were served and have appeared in this action.

[8] In his response brief, Guille claims these Defendants took his book containing the Federal Rules of Civil Procedure and copies of case law and litigation manuals. (Dkt. 133 at 1–2.)

7:21-cv-00149, 2024 WL 3911928, at *6 (W.D. Va. Aug. 22, 2024) (quoting *Taylor v. Knapp*, 871 F.2d 803, 806 (9th Cir. 1989)). Accordingly, the court will dismiss Claim 3 as to these Defendants.

Next, Defendant B. Jones, Miller, and I. Mullins move for dismissal of the only claim asserted against them, Claim 11. (Dkt. 124 at 11–12.) Claim 11 asserts that these Defendants, who are each a member of the Institutional Classification Authority ("ICA"), (Dkt. 92 at 2–3), failed to take any action after Guille reported allegations that he had been raped and that they laughed after Defendant Duncan said that he would be spending the rest of his life in segregation. (Dkt. 24 at 20.) Guille claims these acts violated the First, Eighth, and Fourteenth Amendments. (*Id.*) Guille does not specify any facts relating to any infringement of his First Amendment rights, so this constitutional provision is not implicated. As to these Defendants' alleged "complicity" in supposedly laughing after Duncan said he would never be released to general population, the ICA does not have power to assign an inmate to segregation. Rather, it makes recommendations as to the appropriate placement, which are then considered and implemented by the Facility Unit Head. Va. Dep't of Corr. Operating Procedure 830.1(VI)(A)(1)(c). Therefore, even assuming these individuals laughed at the statement that Guille would remain in segregation, these actions would not support any alleged violation of due process because these Defendants do not have the power to keep Guille in segregation. Mere mocking or verbal abuse is not actionable under Section 1983. *Henslee v. Lewis,* 153 F. App'x 178, 180 (4th Cir. 2005) (unpublished per curiam decision). As to these Defendants' alleged failure to act after Guille reported to them that he had been raped, there is "no basis in law for a private cause of action under § 1983 to enforce an alleged PREA violation."

*Snodgrass v. Messer*, No. 7:16-cv-00050, 2017 WL 975992, at *6 (W.D. Va. Mar. 10, 2017); *see also Bracy v. Tully*, No. 1:22-cv-00827, 2022 WL 3229325, at *3 (E.D. Va. Aug. 10, 2022) (collecting cases). Likewise, there is no "freestanding constitutional right to such an investigation under § 1983." *Bracy*, 2022 WL 3229325, at *4. Accordingly, the court will dismiss Claim 11 and Defendants Jones, Miller, and Mullins will be dismissed from this action.

Finally, as to the motion to dismiss, (Dkt. 123), Defendant Dotson requests his dismissal from this action for lack of alleged personal involvement. The only claim asserted against Dotson is Claim 19. (Dkt. 124 at 9–10.) Guille alleges in Claim 19 that the "director [Dotson], Commissioner, Warden or Administrator, Facility Unit Head, lieutenants, sergeants, and all officers working C and D buildings" violated his rights under the Eighth and Fourteenth Amendments by "forcing [him] to choose between having no recreation and being shackled <u>and</u> handcuffed to a metal table, on a permanent basis." (Dkt. 24 at 23 (emphasis in original).) Guille relates no facts indicating any awareness by Dotson of his situation or his claims. He fails to even allege general or "abstract" awareness of the practice. *Cf. Carter v. Cabell*, No. 24-6706, No. 24-6741, 2026 WL 2235294, at *3 (4th Cir. Aug. 4, 2026). Thus, Guille has not stated a plausible claim of entitlement to relief against Dotson, who will be dismissed from this case.[9]

[9] In a conclusory fashion, Guille contends when opposing the motion to dismiss that Dotson was "aware" of all the violations he claims, and that unspecified discovery would establish this. (Dkt. 133 at 2.) Given the complete lack of facts alleged in the amended complaint, discovery would be an impermissible fishing expedition to find a basis for a claim. *Iqbal*, 556 U.S. at 678–79 (noting that the Federal Rules do "not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions," and that granting a motion to dismiss is appropriate when the facts alleged are insufficient to "permit the court to infer more than the mere possibility of misconduct").

**B. Defendants' Motion for Summary Judgment**

Turning now to the merits of the pending summary judgment motion, Defendants have submitted substantial amounts of documentary evidence and affidavits to the court over the course of this proceeding to date. In connection with the motions pending before the court at this time, (Dkts. 102 and 123), Defendants submitted additional evidence and affidavits and proposed undisputed enumerated facts as required under the court's Local Rule 56(b). (Dkt. 103.) Guille purports to "dispute" every fact asserted by Defendants, (*see* Dkt. 129 at 1), but he has offered very little evidence to substantiate his proclaimed disputes other than the verified complaint, (Dkt. 24 at 30),[10] and Guille's own largely conclusory affidavits.[11] (*See, e.g.*, Dkt. 120-3 at 96–97 (Ex. 2A), 98–99 (Ex. 2B), 102–04 (Ex. 2D), 105–107 (Ex. 2E).) Most of the facts offered by Defendants in connection with the pending motions as undisputed facts are background for understanding the claims and/or do not need to be addressed to resolve the pending motions. The pending summary judgment motion presents issues that are largely motion-to-dismiss-type pure legal issues that can be resolved without any resolution of or even reference to disputed facts. Thus, the court concludes that the information still sought by Guille—as described in Docket Numbers 120-2, 132, and 146—

[10] The court will, of course, give factual allegations made in a verified amended complaint the evidentiary value afforded to such allegations under *Goodman v. Diggs*, 986 F.3d 493, 498 (4th Cir. 2021). However, allegations made by Guille in grievances are not substantive evidence admissible for the truth of the matters asserted. *See Shaheen v. McIntyre*, No. 9:05-cv-00173, 2007 WL 3274835, at *13 (N.D.N.Y. Nov. 5, 2007) (collecting authority and cases and finding that inmate's grievances did not constitute evidence for purposes of motion for summary judgment). Grievances are admissible to prove compliance with PLRA's exhaustion requirements and could be admissible to prove awareness of a claimed condition, but they are not admissible evidence as to the truth of their contained allegations. The court stresses this point, for the benefit of Guille, because much of the "proof" that Guille believes he has is not and will not be admissible evidence.

[11] Guille submitted affidavits or statements from other inmates, which the court considers in resolving disputed issues of material facts. (Dkt. 120-3 at 101; Dkt. 136-2 at 26–27, 29–30, 33). The court notes, however, that affidavits from other inmates that describe general conditions at ROSP are not highly probative of the conditions experienced by Guille.

would not alter its rulings herein, and therefore, the summary judgment motion is ripe for adjudication.

To begin, Guille asserts many claims about confinement conditions under both the Eighth and Fourteenth Amendments. He is a convicted inmate, not a pretrial detainee. (Dkt. 24 at 1.) Accordingly, his claims related to any conditions of confinement arise under the Eighth Amendment, not the Fourteenth. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) (holding that Eighth Amendment controls convicted inmate's claim of excessive force); *Kingsley v. Hendrickson*, 576 U.S. 389, 400 (2015) (noting that the Fourteenth Amendment governs pretrial detainee's claims of excessive force); *see also Blankenship v. Light*, No. 7:26-cv-00031, 2026 WL 1004804, at *1–2 (W.D. Va. Apr. 14, 2026) (considering both amendments as possibly applying to claims of verbal abuse because the inmate had not specified his status). Therefore, Guille's claims asserted under the Fourteenth Amendment in Claims 1, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, and 21 all will be dismissed because these claims are properly asserted under the Eighth Amendment only.

Several of Guille's claims focus on the alleged lack of response to his claim that he had been raped[12] previously by a correctional officer, Defendant Eldridge. The claim that Eldridge assaulted him is pending in Claim 5. (Dkt. 24 at 19.) None of the Defendants moved to dismiss Claim 5. Guille contends generally that he told various other Defendants about the attack at various points, but that no one took action or investigated. Specifically, he claims

[12] Guille relates that Defendant Eldridge forced him to perform fellatio. (Dkt. 24 at 5.) Guille refers to this sexual assault as "rape," and the court uses his characterization herein for clarity even though the alleged act does not constitute rape as defined under Virginia law. Va. Code Ann. § 18.2-61 (criminalizing rape defined as forced sexual intercourse); *id.* § 18.2-67.1 (criminalizing forced fellatio as forcible sodomy). Guille claims no additional contact with any Defendant that would qualify as rape as defined by Virginia law.

that he told Holbrook[13] about it and that she failed to respond in Claim 6; he claims that he told Trent about it and that he[14] failed to respond in Claim 8; he claims that ICA Members and Duncan failed to respond after he advised them of the assault in Claim 11; he claims that non-Defendant Brace failed to respond in Claim 15; and he claims that various Defendants failed to respond to or impeded his grievances about the rape in Claims 7, 9, and 10.

The court need not resolve disputes about facts to determine that these claims are not viable. Section 1983 does not provide an avenue for recovery in connection with these claims. Allegations that staff failed to investigate or report an assault under the PREA do not support a claim of a constitutional violation. Inmates have no independent constitutional right to an investigation of PREA allegations, specifically, or any crime more generally. *Powell v. Temple*, No. 1:22-cv-00302, 2022 WL 2306762, at *4 (E.D. Va. June 27, 2022) (citing *De'lonta v. Clarke*, No. 7:11-cv-00483, 2012 U.S. Dist. 128547, at *7–8 (W.D. Va. Sep. 11, 2012) (collecting cases), *aff'd*, 548 F. App'x 938 (4th Cir. 2013) (per curiam)); *see also Graw v. Fantasky*, 68 F. App'x 378, 383 (3d Cir. 2003)) ("[A]n allegation of a failure to investigate, without another recognizable constitutional right, is not sufficient to sustain a section 1983 claim."); *Vinyard v. Wilson*, 311 F.3d 1340, 1356 (11th Cir. 2002) (holding that there was no constitutional right to an investigation following a violent incident based upon which the plaintiff raised a claim of excessive force); *Stringer v. Doe*, 503 F. App'x 888, 890–91 (11th Cir. 2013) (finding no substantive due process right to an internal investigation by law enforcement). As one district court concluded, "a claim based on an inadequate investigation fails to state a constitutional

---

[13] Guille argues against dismissal of Claim 6 against Holbrook, (*see* Dkt. 120-2 at 5), saying that he needs the name of the nurse, but he subsequently identified the nurse as Holbrook later on the very same page.

[14] The complaint, as amended, references an alleged report made by Guille to a female doctor. As noted previously, Guille advised that the Doe doctor Defendant was Donnie Trent, so the court refers to Trent as a "he" here.

violation because private citizens have no constitutional or federal statutory right to compel the investigation of another person." *Miles v. Mitchell*, No. 3:18-CV-P116, 2018 WL 5929643, at *5 (W.D. Ky. Nov. 13, 2018) (dismissing claim that defendants failed to investigate a PREA report properly) (citing *Diamond v. Charles*, 476 U.S. 54, 64–65 (1986)). Therefore, Guille's claims that Defendants Nurse Holbrook, Dr. Trent, Duncan, B. Jones, Miller, I. Mullins, Rogers, Eldridge, Russell, Ward, Ellerbee, Milgram, Boles, Short, Cobb, Massengill, Jones, Hall, and non-Defendant Brace failed to report or take action in connection with Guille's sexual assault allegations, even when assumed to be true, do not establish an Eighth Amendment violation generally. Finally, the court notes that after the institution received a written report from Guille contending that he had been raped, that an investigation was, in fact, conducted. (Dkt. 136-2 at 7; Dkt. 132-2 at 16.) Guille's dissatisfaction with the results of that investigation—which concluded that his allegations were unsubstantiated—does not support a claim.

Guille's Claims 6 and 8 that are asserted against Nurse Holbrook and Dr. Trent relate to their failure to report the claimed rape and to "take action." (Dkt. 24 at 19.) Guille does not specify any particular type of action (other than the reporting) that should have been taken but was not. Guille does not frame these Claims as claims of deliberate indifference to a serious medical need. But given his *pro se* status, the court has considered whether such a claim could be viable based upon the facts he pleaded based on his invocation of the Eighth Amendment and the fact that these Defendants are medical providers.

An Eighth Amendment claim of deliberate indifference has two components. *Jackson*, 775 F.3d at 178. A plaintiff must show that he had serious medical needs (*i.e.,* the objective

component) and that a defendant acted with deliberate indifference to those needs (*i.e.,* the subjective component). *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). A medical need is sufficiently serious for purposes of the objective component "when it has been diagnosed by a physician as mandating treatment or is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gordon v. Shilling*, 937 F.3d 348, 356 (4th Cir. 2019) (internal quotation marks omitted). The subjective component requires an inmate to show that a defendant "subjectively knew of and disregarded an excessive risk to the inmate's health or safety." *Hixson*, 1 F.4th at 302. "That is a higher standard for culpability than mere negligence or even civil recklessness, and as a consequence, many acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Jackson*, 775 F.3d at 178. To establish an Eighth Amendment violation, "it is not enough that an official *should* have known the risk; he or she must have had actual subjective knowledge of both the inmate's serious medical condition and the excessive risk posed by the official's action or inaction." *Id.* (emphasis added).

A failure to respond to a sexual assault could support a claim under the Eighth Amendment if defendants were deliberately indifferent to a serious medical need. For example, ignoring the physical injury arising from such an assault could provide the basis for a claim. However, Guille does not contend that he reported the assault contemporaneously to anyone such that any Defendant was aware of a serious medical need. In fact, Guille claims that the first time he told any medical provider about the alleged rape was months after it occurred. He contends that he first did so after he burned himself in September 2024. (Dkt. 24 at 6 (stating that he first reported when being treated for burns); Dkt. 10-5 ¶ 10 (establishing

date of burns).)[15] Defendants contend that Guille's first mention of any assault was later in October 2024 when he submitted a written complaint about the claimed assault. (Dkt. 103 at 10; Shirks Aff. ¶ 6 (Dkt. 10-3); Dkt. 10-4 at 26, 38.) The date discrepancy is not material at this point, however, because the parties agree generally that Guille did not immediately report the claimed assault such that an apparent serious medical need for physical injuries was ignored. Additionally, Guille has neither claimed nor presented evidence that he advised anyone of any need for physical or medical care arising from any injury sustained in the assault, as opposed to simply reporting that an assault had occurred, at any time.

The court also recognizes that Guille's mental health needs could qualify as a serious medical need that could support an Eighth Amendment claim if Defendants were deliberately indifferent to those needs. However, Guille's mental health treatment records demonstrate that he has been consistently seen by mental health professionals on an ongoing basis since his arrival at ROSP. (Brace Aff. ¶¶ 9, 15, Encl. C. (Dkt. 10-6) (attaching mental health records documenting the assessments); Dkt. 103 ¶ 63 (identifying dates of mental health assessments).) According to the submitted records, Guille has been evaluated by the ROSP's psychiatrist and prescribed medication. (Dkt. 103 at 18–19; Dkt. 10-6, Brace Aff. ¶¶ 10–11.) Guille clearly believes his mental health treatment has not been optimal; but mere negligence is not enough to support a constitutional claim, and the consistent provision of care shows that Defendants

[15] Guille, in other filings, reports a variety of different reporting dates to others. For example, he claims that he told non-Defendant Brace about the rape on dates in August and September of 2024. (Dkt. 24 at 11; Dkt. 10-4 at 25, 44; Dkt. 120-3 at 31.) On October 11, 2024, he filed a grievance claiming that he told ICA members about the assault on August 1, 2024. (Dkt. 10-4 at 24, 28; Dkt. 136-2 at 2.)

have not been deliberately indifferent to his mental health needs. *Hixson*, 1 F.4th at 302–03 (holding that a doctor's consistent care for diabetes foreclosed claim of deliberate indifference). Guille has not established any facts supporting a conclusion that the mental health "treatment given [was] so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id.* at 303 (internal quotation marks omitted). Accordingly, Defendants are entitled to summary judgment as to Claims 6 and 8 in their entirety, and as to Claim 11 to the extent it alleges a failure to report Guille's allegations of rape.

Finally, the portion of Claim 11 that relates to mocking comments allegedly made by Duncan and/or ICA members does not support a viable claim. Guille opposes dismissal of this claim, arguing that he has not yet been provided with any reports made by ICA members regarding his rape claims. (Dkt. 120-2 at 5.) This is non-sensical given that the claim is explicitly premised upon the alleged failure of these individuals "to make any type of report." (Dkt. 24 at 20.) Even if there were such a report, it would not establish the viability of the portion of Claim 11 that relates to alleged mocking of Guille and an announced intention to keep him in segregation. Guille alleges that Duncan "said no matter what [Guille] did or said [he'd] be spending the rest of [his] life in segregation, [and] that they had no intention of ever letting [him] go to the general population at ROSP."[16] (*Id.*) However, even assuming Duncan made this statement, the "Constitution does not protect against all intrusions on one's peace of mind." *Pittsley v. Warish*, 927 F.2d 3, 7 (1st Cir. 1991). Accordingly, a prison official's

[16] Duncan denies making any such statements, (Duncan Aff ¶ 7 (Dkt. 10-1)), but the court need not resolve the issue of whether these statements were made. Even assuming that Duncan made these statements, the statements do not support a viable constitutional claim.

comments, no matter how inappropriate or concerning, do not alone establish an Eighth Amendment violation. *Cooper v. Johnsin*, No. 7:23-cv-00708, 2024 WL 2869045, at *1 (W.D. Va. June 6, 2024) (collecting cases) ("Verbal harassment or verbal abuse by prison officials in and of itself does not state a constitutional deprivation under § 1983."); *Richardson v. Davis*, No. 7:21-cv-00559, 2021 WL 5889985, at *2 (W.D. Va. Dec. 10, 2021) ("Mere threats or verbal abuse by prison officials, without more, do not state a cognizable claim under § 1983." (quoting *Henslee v. Lewis*, 153 F. App'x 179, 179 (4th Cir. 2005))); *Morva v. Johnson*, No. 7:09-cv-00515, 2011 WL 3420650, at *7 (W.D. Va. Aug. 4, 2011) (collecting authority for the proposition that "[v]erbal harassment or idle threats to an inmate, even to an extent that it causes an inmate fear or emotional anxiety," do not give rise to a due process violation or an Eighth Amendment violation). Therefore, Defendants are entitled to summary judgment as to Claim 11 to the extent it alleges an Eighth Amendment violation based on Duncan's comments or anyone else laughing at the comments.

Guille's Claim 4 is challenged by Defendants based on a number of grounds. (Dkt. 103 at 22–24.) Guille asserts in Claim 4 that "'[e]ach and every officer, sergeant and lieutenant' working Unit D-3 on First and Second shifts between approximately 6-23-24 and 6-30-24 was deliberately indifferent to my health and safety violating my 8th and 14th Amendment rights for ignoring my pleas to either be moved or to allow me to clean my cell that was completely

covered in feces and urine and for failing to report it or to take any corrective action."[17] (Dkt. 24 at 18–19.)[18]

Defendants challenge this claim for lack of personal identification of any person that acted or did not act. (Dkt. 103 at 23.) Guille's defense of this claim is that he still lacks names of the Defendants, (Dkt. 120-2 at 9), and he faults Defendants generally for refusing to provide him with these names. However, Guille did not name Doe Defendants in connection with this claim. Therefore, there is no basis for ongoing retention of a claim that has not been asserted against any identified Defendant because Section 1983 liability is "personal, based upon each defendant's own constitutional violations." *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001); *see also Iqbal*, 556 U.S. at 676 (providing that a § 1983 action must plead that the defendant, through his own individual actions, violated the Constitution). "[L]iability may be imposed based only on an official's own conduct." *Danser v. Stansberry*, 772 F.3d 340, 349 (4th Cir. 2014).

Defendants also argue that no jury could find in Guille's favor on this claim because the claim relates to dates that preceded his incarceration. As an example of the facts that Guille disputes, he claims that he did not arrive at ROSP until July 27, 2024. (Dkt. 24 at 4.)[19] Defendants assert that he arrived on July 23, 2024, and have provided evidence supporting

[17] Defendants deny these conditions and submitted cell inspection reports and cell assignment records to refute Guille's contentions. (Cornett Aff. ¶ 5, Encls. A and B (Dkt. 103-1); Duncan Aff. ¶ 9.) Guille maintains, nonetheless, that he was repeatedly placed into cells that were covered in waste and that he complained about this, but that no action was taken.

[18] Guille also complains in Claim 2 that Defendant Cornett (initially identified as "Facility Unit Head") ordered that Guille be placed into Unit D-3 cell 301, which he alleges was contaminated with feces and urine, upon his arrival to ROSP, where he remained for a week. (Dkt. 24 at 5, 18.) That Claim has not been challenged in the pending motions. Claim 4 relates to the alleged failure of all staff during that subsequent week to allow him to clean the cell or to move him to another cell.

[19] The court notes that Guille himself referenced other claimed dates of arrival in his grievances, referring to his arrival at ROSP in May 2024, June 23, 2024, and July 22, 2024. (Dkt. 1 at 4; Dkt. 10-4 at 29, 33, 36; Dkt. 136-2 at 12.) The exact date of his arrival is not material to the issues before the court at this time, however, because Defendants and Guille all now agree he was not at ROSP in June of 2024. Guille corrected the date of his alleged assault to July in an internal prison grievance in October 2024, (Dkt. 136-2 at 9), and in this action, by requesting leave to amend his complaint. (*See* Dkt. 5.)

that date as the date of Guille's transfer. (Dkt. 10-2 ¶ 4); *see also* Va. Dep't of Corr., Inmate & Supervisee Locator, https://vadoc.virginia.gov/general-public/inmate-and-supervisee-locator (identifying the initial date of his custody at ROSP as July 23, 2024). Thus, there is at least some dispute about this fact, but it is not a material dispute as to this claim. The amended complaint—submitted long after Guille was aware of his error in claiming his arrival at ROSP was in June 2024[20]—asserts that Guille was placed in feces and urine-contaminated cells specifically during June 23–30, 2024, dates that are prior to his transfer to ROSP. (Dkt. 24 at 18.) Thus, even accepting Guille's claimed, undocumented July 27, 2024, date of arrival to ROSP as the correct date, his claim about contaminated cells in June 2024 should be dismissed, because no reasonable jury could find in Guille's favor as to his claim that he was housed in a contaminated cell in June 2024. Guille was not at ROSP at that time, even by his own account. However, even if Guille had changed the dates in Claim 4 to reflect the correct dates of his arrival at ROSP, he still failed to identify any particular individual associated with the allegations. Accordingly, the court will dismiss Claim 4.

Some of Guille's asserted claims involve allegations that his grievances and medical requests were impeded by various Defendants—specifically, Claims 7, 9, and 10. Guille claims generally that groups of Defendants "crumpl[ed] up and thr[ew] away" or "confiscated and failed to return" grievances, complaints, and medical requests. (Dkt. 24 at 8, 19, 20.) He does not specify dates or circumstances, but contends that his rights under the First, Eighth, and

[20] Guille's original complaint, filed in October 2024, asserted that he had been placed into a feces-covered cell in May 2024 in the complaint's section containing his factual allegations. (Dkt. 1 at 4–5.) But in the section asserting Claim 4, he alleged that he was placed in this cell in June 2024. (*Id.* at 18.) Guille's amended complaint was filed February 2, 2025. (Dkt. 24.) It repeated the June 2024 date range in the asserted claim section, (*id.* at 4), but it changed his date of arrival at ROSP to July 27, 2024, in the factual allegations section, (*id.* at 5).

Fourteenth Amendments were violated by these actions. (*Id.* at 19–20.) He also contends that summary judgment should not be granted because he "needs the full names" of Defendants Rogers and Russell[21] because they kept "throwing away plaintiff's grievances." (Dkt. 120-2 at 5, 9.) But this is irrelevant because his allegations do not state a claim.

To succeed on a due process claim, a plaintiff must demonstrate that he possessed "a constitutionally cognizable life, liberty, or property interest." *Sansotta v. Town of Nags Head*, 724 F.3d 533, 540 (4th Cir. 2013). The Fourth Circuit has held that "inmates have no constitutional entitlement or due process interest in access to a grievance procedure." *Booker v. S.C. Dep't of Corr.*, 855 F.3d 533, 541 (4th Cir. 2017). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance process . . . ." *Id.*; *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) ("[T]he Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state."); *see also Garraghty v. Va. Dep't of Corr.*, 52 F.3d 1274, 1285 (4th Cir. 1995) ("[T]he mere fact that a state agency violates its own procedures does not *ipso facto* mean that it has contravened federal due process requirements." (cleaned up)); *Riccio v. County of Fairfax*, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding "state-created procedures" do not define the standard for due process). Thus, even assuming Defendants confiscated Guille's attempted grievances, such conduct does not constitute a violation of Guille's due process rights. Accordingly, Defendants are entitled to summary judgment as to Guille's complaints about confiscation or failure to return his grievances.

[21] Guille previously identified Defendant Rogers as Coy Rogers. (Dkt. 47.) Defendants Jacob Russell and Coy Rogers have appeared in this action, so if those are the Defendants Guille indeed intended to name, there is no need for any first names for these Defendants.

Guille also complains that Defendants threw away his medical requests. (Dkt. 24 at 19–20.) He has alleged no resulting harm from this act, however, and he has not stated any viable claim that Defendants were deliberately indifferent to any serious medical need as explained above. Guille mentions a failure to report unspecified "threats" against him, (*id.* at 20). But this alleged failure does not suffice to establish a claim either, as it is too vague and non-specific to state a plausible claim of entitlement to relief, and Guille has no constitutional right to an investigation as explained above. To the extent that Guille claims his grievances were impeded as a form of retaliation for an exercise of his First Amendment rights, the court will address that now.

Some of Guille's Claims assert that he was retaliated against by Defendants. In Claims 7, 9, and 10, Guille alleges that ROSP staff violated his First, Eighth, and Fourteenth Amendment rights when they allegedly and "repeatedly confiscated and failed to return" and "crumpl[ed] up and thr[ew] away" his complaints, grievances, and medical requests. (Dkt. 24 at 8, 19–20.) Only in Claim 9 does Guille attribute this to "retaliation" but the court has considered whether any viable claim of retaliation has been stated in all of these Claims given his reference to the First Amendment. (*Id.* at 20.) In Claim 14, Guille asserts that "every Officer, Sgt., and lieutenant working first and second shifts" retaliated against him by putting him on strip cell status for "attempting to report rape and staff assaults and threats" in violation of the First, Eighth and Fourteenth Amendments. (Dkt. 24 at 12, 21.)

Generally, "[r]etaliation claims in the prison setting are sometimes treated with skepticism by the courts 'because every act of discipline by prison officials is by definition retaliatory in the sense that it responds directly to prisoner misconduct.'" *Lassiter v. Blevins*,

No. 7:23-cv-00650, 2024 WL 4831881, at *5 (W.D. Va. Nov. 19, 2024) (quoting *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996) (*en banc*)). Consequently, a plaintiff "must present more than naked allegations of reprisal." *Adams*, 40 F.3d at 74. To establish a claim for retaliation, a plaintiff must show that (1) he engaged in constitutionally protected activity, (2) the defendant took action that adversely affected the exercise of the plaintiff's constitutional rights, and (3) the adverse act was causally related to the protected activity. *Martin v. Duffy*, 977 F.3 294, 299 (4th Cir. 2020). With respect to the first element, inmates have a protected right to file grievances and lawsuits without being subject to retaliation. *Booker*, 855 F.3d at 545–46; *Hudspeth v. Figgins*, 584 F.2d 1345, 1348 (4th Cir. 1978). As to the second element, "a plaintiff suffers adverse action if the defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 500 (4th Cir. 2005) (internal quotation marks omitted). Accordingly, the retaliatory act must have caused the plaintiff to suffer more than a "*de minimis* inconvenience." *ACLU of Md., Inc. v. Wicomico County*, 999 F.2d 780, 786 n.6 (4th Cir. 1993). As to the third element of causation, the Fourth Circuit applies a burden-shifting approach. *Martin*, 977 F.3d at 300 (citing *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1974)). First, the plaintiff must show that his "protected conduct was a substantial or motivating factor in the [defendant's] decision to take adverse action." *Id.* To do so, the plaintiff must at least show that the defendant had knowledge of his protected activity and that there was "some degree of temporal proximity" between the protected speech and the adverse action. *Constantine*, 411 F.3d at 501. If the plaintiff makes this *prima facie* showing, then the defendant bears the burden of proving that he "'would have reached the

same decision . . . in the absence of the protected conduct." *Martin*, 977 F.3d at 299 (quoting *Mt. Healthy*, 429 U.S. at 283) (alteration in original) (cleaned up).

Defendants generally deny the conduct alleged that supports Claims 7, 9, 10, and 14. (*See, e.g.,* Dkt. 103 at 26.) But the court need not resolve any dispute about what occurred because, even accepting Guille's allegations as true, Guille's assertions that groups of Defendants generally retaliated against him in Claims 7, 9, 10, and 14 are too conclusory to state a plausible retaliation claim.[22] As for the nature of what is "plausible," the Supreme Court explained that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663. "[D]etermining whether a complaint states a plausible claim for relief is context-specific, requiring the reviewing court to draw on its experience and common sense." *Id.* at 663–64. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Id.* at 679 (cleaned up). However, while the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully," *id.* at 678, it "does not impose a probability requirement," *Twombly*, 550 U.S. at 556.

Here, Guille asserts that a group of officers threw away unspecified "complaints, grievances, and medical requests" in Claim 7, that Short and Hall "confiscated" unspecified

[22] Guille's Claim 18 is not challenged in the pending motions. It asserts that Defendant Cornett (initially referred to by Guille as the "Unit Manager") told Guille that he would stay on HSMP ("High Security Management Plan" or strip-cell status) "until [he] quit trying to file grievances." (Dkt. 24 at 14, 22.) This claim has specificity and an identified Defendant unlike Claim 14, which was asserted against all officers, sergeants, and lieutenants "working first and second shifts." (Dkt. 24 at 21.)

written allegations of "rape, assaults, and threats" in Claim 9, that a group of officers "confiscated and failed to return" grievances in Claim 10, and that "every officer, sgt., and lieutenant" put him on "'strip cell' status" in Claim 14. (Dkt. 24 at 19–20.) Guille provides no dates or specifics about instances related to any particular defendant. There is simply not enough detail provided that would enable any Defendant to defend against these claims (other than by a blanket denial of any wrongdoing to counter the blanket allegation of wrongdoing), and thus Guille has failed to establish a plausible claim of entitlement to relief with regard to the challenged retaliation claims. *See Edwards v. Kanode*, No. 7:19-cv-00324, 2020 WL 1158253, at *4 (W.D. Va. Mar. 10, 2020) (finding that "the close timing of events and [the plaintiff's] own self-serving and factually unsupported statement" that officials had conspired to retaliate against him did not show causation); *Bratcher v. Hampton Roads Reg'l Jail*, No. 1:16-cv-00224, 2018 WL 1037052, at *6 (E.D. Va. Feb. 21, 2018), *aff'd*, 738 F. App'x 793 (4th Cir. 2018) ("[B]are and conclusory assertions and 'mere labeling of an action as retaliation' are not sufficient to support a § 1983 claim." (quoting *Cooper v. Duncan*, No. 7:16-cv-00578, 2017 WL 2271501, at *2 n.2 (W.D. Va. May 23, 2017))).

Defendant Mefford is the law librarian at ROSP and the sole named Defendant in Claim 20. (Dkt. 24 at 23; *see* Dkt. 103 at 6.) Mefford has moved for summary judgment as to Guille's claim that she has refused him law library materials and assistance in violation of the First and Sixth Amendments. (Dkt. 103 at 34–36.) Mefford has presented documentary evidence that she has provided all the materials requested by Guille that she can provide under applicable rules and regulations and if the materials are available to be provided. (Mefford Aff. (Dkt. 103-3).) Guille claims that he has made additional requests that have been ignored

or thrown away, but he has not presented any documentary evidence of this or provided descriptions of what he requested and when he requested it. Guille says he is "seeking proof" regarding these contentions. But the court need not determine the facts or wait for further facts to be adduced because he has failed to sufficiently state a plausible claim of entitlement to relief. The Sixth Amendment applies only in criminal proceedings, *Austin v. United States*, 509 U.S. 602, 608, (1993) ("The protections provided by the Sixth Amendment are explicitly confined to 'criminal prosecutions.'"), not to claims about law library access in civil cases; Guille has not claimed to have any criminal cases pending against him. Although denied law library access could in theory give rise to a First Amendment claim if Guille's access to the courts were impeded and damaged as a result, Guille has not made any such claim. He has not identified any impact at all from the alleged denials. Accordingly, he has failed to present a plausible claim of entitlement to relief as to Claim 20. *See White v. White*, 886 F.2d 721, 724 (4th Cir. 1989).

Defendants moved for summary judgment as to Claim 21, which relates to the provision of hygiene items. (Dkt. 103 at 29–30.) Guille alleged that Defendant Cornett and everyone else "working C and D buildings between 6-23-24 and the present day" violated the Eighth and Fourteenth Amendments by failing to provide him any hygiene items since his arrival at ROSP. (Dkt. 24 at 21.) Guille's rejoinder to this challenge is that he needs proof from the Defendants that he received the items. (Dkt. 120-2 at 5–6.) Guille misunderstands the burden of proof here. He must first plead a viable claim and then, to avoid summary judgment, establish that there is a genuine dispute about material facts. Guille has done

neither. He has not identified any individual Defendant associated with this claim as is required, other than his reference to Cornett as Facility Unit Head.

While the deprivation of hygiene items can, in some circumstances, form the basis for an Eighth Amendment violation, they cannot in this case because Guille "does not allege any harm from those conditions." *Babb v. Hayes*, No. 7:22-cv-00590, 2023 WL 3304537, at *4 (W.D. Va. May 8, 2023). He does not allege any injury resulting from lack of eating utensils or hygiene items, warranting dismissal of any Eighth Amendment claim. *See Moore v. Warden at KMCC*, No. 7:23-cv-00493, 2025 WL 897553, at *3 (W.D. Va. Mar. 24, 2025) (dismissing a similar claim); *see also Martin v. Lane*, 766 F. Supp. 641, 648 (N.D. Ill. 1991) (concluding that claims about the lack of eating utensils are not actionable, as the Constitution does not mandate comfortable prisons).

Further, Defendants established that Guille has never been considered indigent under VDOC's policies since his arrival at ROSP. (Younce Aff. ¶¶ 3–5 (Dkt. 103-2).) Guille does not contest his non-indigency in his filings. Defendants also established that VDOC policy mandates the provision of hygiene items only to non-indigent inmates. *See* Va. Dep't of Corr. Operating Procedure 801.6. They have provided evidence that Guille has purchased hygiene items from the commissary as is required for non-indigent inmates. (Cornett Aff. ¶ 6, Encl. C.) The court also notes that restrictions about what an inmate may possess in his cell can be imposed after a disciplinary charge conviction or after an assessment that restrictions are required for safety. Defendants introduced evidence that Guille has been convicted of twenty-one disciplinary charges. (Dkt. 10 at 7.) He "disputes" that he has that many charges or that he was notified of them, (Dkt. 120-3 at 112), but he clearly, at least at some time, was on

restricted status, which would explain the lack of items at these times. Additionally, Guille acknowledges that restrictions were imposed upon him when he was placed on strip-cell status, which would also explain the lack of items at times.

Finally, Guille has never identified Brace as a Defendant in this action. Because Guille has never asked in any submission that she be named as a Defendant,[23] she has not been served and cannot be held liable. Therefore, Claim 15, which is asserted only against Brace, will be dismissed from this action without prejudice. This court also informed Guille he needed to state whether he objected to the dismissal of the party designated "ROSP Commissioner" given that this position does not exist in the VDOC system and given that the Warden of ROSP, David Anderson, has appeared as a Defendant in this action. (Dkt. 43 at 7.) Guille did respond, (*see* Dkt. 47), but he did not indicate any objection to the dismissal of the party designated as "ROSP Commissioner." The court further explained the duplication of parties in interest in Dkt. 126 at 2, to which Guille filed no response or objection. Accordingly, the court will dismiss the unknown party designated as "ROSP Commissioner" from this action.

## IV. Conclusion and Order

In accordance with the reasoning above, the court **GRANTS** Defendants' motion to dismiss, (Dkt. 123), and Defendants' motion for partial summary judgment, (Dkt. 102).

[23] Guille claims that he has issued discovery seeking the first name of Brace, but that he has not been given her first name. (Dkt. 129 at 3.) However, Guille is well-aware that he need not identify defendants by their full names as he has, from the outset of this litigation, identified intended defendants by last name only (who through the litigation process have been identified fully), and he has named multiple Doe Defendants (most, but not all, of whom have been identified through the litigation process). He attributed actions to Brace in the original complaint, (Dkt. 1 at 11–12), and in the amended complaint, (Dkt. 24 at 11–12). Brace filed an affidavit in connection with Guille's motion for a preliminary injunction. (Dkt. 10-6.) Nonetheless, Guille never named her as a defendant or requested amendment to name her.

Accordingly, the court **DISMISSES** Claims 3, 6, 8, 11, 20, and 21 from this action with prejudice. The court **DISMISSES** Claims 4, 7, 9, 10, 14, and 15 without prejudice. The court **DISMISSES** Defendants Dotson, I. Mullins, Miller, B. Jones, Owens, G. Mullins, D. Mullins, Adams, Fox, Mefford, Rogers, Russell, Warde, Ellerbee, Milgram, Bowles, Hall, Cobb, Massengill, Owens, Duncan, Anderson, Holbrook, and Trent from this action. The court **DISMISSES** "ROSP Commissioner" as a Defendant. The court **DISMISSES** all condition of confinement Claims asserted under the Fourteenth Amendment. Claims 1, 2, 5, 12–13, and 16–19 will proceed. The remaining identified Defendants for these claims are R. Potter, Cornett, Eldridge, Lt. Jones, Short, and Almarode.[24]

The Clerk is **DIRECTED** to mail a copy of this Amended Memorandum Opinion and Order to Guille.

**IT IS SO ORDERED.**

**ENTERED** this 22nd day of September, 2026.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE

[24] The remaining Defendants for each proceeding Claim are as follows: Defendants Potter and John Doe No. 1 for Claim 1; Defendant Cornett for Claim 2; Defendants Eldridge and John Doe No. 2 for Claim 5; Defendants Sergeant Doe and Jones for Claim 12; Defendant Short for Claim 13; Unspecified Defendants for Claim 16 (no challenge made to date on this basis); Defendant Almarode for Claim 17; Defendant Cornett for Claim 18; Unspecified Defendants for Claim 19 (no challenge made to date on this basis).